UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MICHELLE S. BROWN                                CIVIL ACTION

VERSUS                                           NO:      02-0453

JO ANNE B. BARNHART, COMMISSIONER                SECTION: "A" (4)
OF SOCIAL SECURITY

## REPORT AND RECOMMENDATION

I.    **Introduction**

This is an action for judicial review of a final decision of the Commissioner of Social Security pursuant to Title 42 United States Code § 405(g). The Commissioner denied Michelle Brown's request for Disability Insurance Benefits and Supplemental Security Income Benefits under Title XVI of the Social Security Act, Title 42 United States Code § 1382c.

The matter was referred to the undersigned United States Magistrate Judge pursuant to Title 28 United States Code § 636(b) and Local Rule 19.02E(b), for the submission of Proposed Findings and Recommendations.

II.   **Factual and Procedural Summary**

The claimant, Michelle Brown, is a fifty-two-year-old woman with who alleges that she has been disabled since April 15, 1999 from depression, muscle spasms in her neck and back, headaches, and a bladder problem. She has past relevant work experience as a packer and a sales clerk. Brown

has been seeking disability benefits since 1999.  Because of an error in the agency's ability to produce a transcript from an earlier administrative proceeding, the matter was remanded for another hearing.[1]  The second hearing took place and the ALJ found that Brown suffers with depression, a severe impairment, but that the impairment did not equal in severity the requirements set forth in the Listing of Impairments, Appendix 1 Subpart P, 20 CFR Part 404.  (Tr. 28, Findings 3,4).

He further found that Brown's allegations of pain and the limitations imposed by her depression were exaggerated and not supported by the objective medical evidence.  (Tr. 28, Finding 5).  Additionally, the ALJ found that Brown has the residual functional capacity to perform sedentary or light work not involving strong emotional stress, crowds of people, or repetitive use of her hands associated with her carpal tunnel syndrome problems.  (Tr. 28, Finding 7).  The ALJ further found that there were jobs existing in the national economy given her age, education, work experience, and residual functional capacity such that she was not disabled within the meaning of the regulations.  (Tr. 28, Finding 9).

Brown contends that the ALJ's decision should be reversed because it is not based on substantial evidence.  She seeks the award of benefits on two grounds:  (1) she contends that the ALJ erred when he failed to properly complete the hypothetical presented to the vocational expert; and (2) because of the agency's extensive delay in processing her administrative claim, she contends that she should be awarded benefits as  "justice delayed is justice denied."

## III.    <u>Standard of Review</u>

---

[1]The plaintiff's initial application for disability insurance and supplemental security income was denied and review sought in this court.  At the time Brown sought review of the original decision the Commissioner sought to remand the matter because it could not locate the transcript of the proceeding.  In the mean time Brown filed a second application which was denied and consolidated with the first application which the Appeals Council declined to assert jurisdiction over. The decision of Administrative Law Judge Carl Sarett became the final administrative decision.

The role of the Court on judicial review under Title 42 U.S.C. § 405(g) is limited to determining whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence.  *See Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999).  The Court may not re-weigh the evidence, try issues *de novo* or substitute its judgment for that of the Secretary.  *See id*.  If supported by substantial evidence, then the Secretary's findings are conclusive and must be affirmed.  *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  *See also Wilkinson v. Schweiker*, 640 F.2d 743, 744 (5th Cir. 1981).

"Substantial evidence is such relevant evidence as a reasonable mind might accept  to support a conclusion."  *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995).  "It is more than a mere scintilla and less than a preponderance."  *Id.*  It must do more than create a suspicion of the existence of the fact to be established, and no "substantial evidence" will be found only when there is a "conspicuous absence of credible choices" or "no contrary medical evidence."  *Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973); *Hemphill v. Weinberger*, 483 F.2d 1137, 1138 (5th Cir. 1973).

The concept of disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted  . . . for a continuous period of not less than twelve months."  42 U.S.C. §§ 416(i)(1), 423 (d)(1)(A).  Section 423(d)(3) of the Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

In determining whether a claimant is capable of engaging in any substantial gainful activity,

the Secretary applies a five-step sequential evaluation process.  The rules governing the steps of this evaluation process are:  (1) a claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are; (2) a claimant will not be found to be disabled unless he has a "severe impairment"; (3) a claimant whose impairment meets or is equivalent to an impairment listed in Appendix 1 of the regulations will be considered disabled without the need to consider vocational factors; (4) a claimant who is capable of performing work that he has done in the past must be found "not disabled"; and (5) if a claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience, and residual functional capacity must be considered to determine whether he can do other work.  *See Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).  The burden of proof is on the claimant for the first four steps, but shifts to the Secretary at step five.  *See Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989).

For mental impairments, an additional regulatory process supplements the five-step process detailed above.  *Plummer v. Apfel*, 186 F.3d 422, 428 ( 3d Cir. 1999).  It requires the hearing officer to record the pertinent signs, symptoms, findings, functional limitations and effects of treatment contained in the case record in order to determine if a mental impairment exists.  *Id.*  If an impairment is found, then the examiner must analyze whether certain medical findings relevant to a claimants ability to work .[2]  *Id.*

---

[2]20 C.F.R. § 404.1520a(c)(3) provides for the examination of the degree of functional loss in four areas of function considered essential to work.  These areas of activities are; daily living; social functioning, concentration, persistence pace; and deterioration, or decompensation in work or work-like settings. 20 C.F.R. § 404.1520a(c)(3).  The degree of functional loss is rated on a scale that ranges from no limitation to severe the claimant cannot perform these work related functions.  20 C.F.R § 404.1520a(c)(4). This information  is detailed in the Psychiatric Review Treatment Form.

**IV.**   <u>**Analysis**</u>

    **A.**   <u>**Defective Hypothetical**</u>

Brown initially contends that despite the evidence, the ALJ failed to include in his hypothetical to the vocational expert her limitation of moderate restriction in concentration, persistence and pace.  She contends that the additional moderate restriction was potentially disabling but that the vocational expert was not asked to consider this limitation.  Consequently, she contends that the ALJ's decision was not based upon substantial evidence.

The Commissioner, on the other hand, contends that Brown fails to show any increase in her restrictions resulting from her deficiency in concentration, persistence and pace; and that Brown was given an opportunity to correct any deficiency in the ALJ's question of the vocational expert but her attorney failed to do so.

The Fifth Circuit has held that a hypothetical question posed to the vocational expert by the ALJ must reasonably incorporate "all disabilities of the claimant recognized by the ALJ," and the claimant or his representative must be "afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question)." *Bowling v. Shalala,* 36 F.3d 431, 436 (5th Cir. 1994).  If this is not the case, "a determination of non-disability based on such a defective question cannot stand." *Id.* ; *see also Gallant v. Heckler,* 753 F.2d 1450, 1456 (9th Cir.1984)(noting that "unless there is record evidence to adequately support [assumptions made by a vocational expert], the opinion expressed by the vocational expert is meaningless.").  The *Bowling* rule was further explained in *Boyd v. Apfel*. *See* 239 F.3d 698 (5th Cir. 2001).  In *Boyd* the Circuit Court

held that *Bowling* does not state that a party's failure to point out the problems in a defective hypothetical "automatically salvages the hypothetical as a proper basis for a determination of non-disability." *Id.* at 707.

The record shows that the June 25, 2002 hypothetical included limitations associated with depression, headaches, incontinence, and carpal tunnel syndrome. (Tr. 65-66). The hypothetical further included a residual functional capacity limiting her to sedentary to light work with no strong emotional pressure.[3] *Id.* The ALJ supplemented the hypothetical to include reference to constant severe pain in Brown's neck, back, hand, right arm, and drowsiness from her medications.[4] *Id.* at 70. The vocational expert after considering the totality of the limitations presented, concluded that Brown would be disabled. *Id.*

After the first application was consolidated with the second, the ALJ conducted another hearing to consider the alleged limitations or disabilities raised in the first application along with those raised in the second. During the December 2002 hearing, another hypothetical was presented

---

[3] The June 2002 hearing was based on an application filed on October 16, 2000.

[4] Q: Okay. Please assume that claimant's major problem is depression. She has tension headaches, which are helped by medications. Please assume that these are not acute or incapacitating. She has chronic pain syndrome affecting her neck, back. She also has headaches, which are probably tension headaches. We'll assume that these pains are not acute or incapacitating. She has some stress incontinence, which [we are] assuming is not acute or incapacitating. She has a history of fracture of the right wrist and the carpal tunnel syndrome in that arm, which is–which are not of a severe degree at the present time or in the recent past. We'll assume that the claimant would have a residual functional capacity to do sedentary or light work where there would be no strong emotional pressure. There should be no prolonged repetitive use of the right hand such as would be associated with carpal tunnel problems. Now with those limitations and considering claimant's age, education, and background, could she do her work previously done by her as a packer in such a thing as a plant making tapes as that work would generally be done in the national economy? (Tr. at 65-66).

The ALJ further restricted the hypothetical to include the following:

Q: Okay. If we would assume in addition to what I said before claimant has constant **severe pain in her neck, back, or hand, the right arm**, I should say, almost constant, she has daily severe drowsiness from her medication, she has frequent very **severe headaches**, which are not significantly relieved by medication she should–would she be able to do any work? *Id.* at 70.

and was limited to the period between April 15, 1999 and June 6, 2000. The ALJ limited the hypothetical to these dates because Apirl 15, 1999 is the date of her application and the original hearing date was June 6, 2000. *Id.* at 77-78.[5]

The December 2002 hypothetical, in contrast, included the limitations of depression, moderate limitation in social functioning, carpal tunnel syndrome, muscle tension, headaches, neck pain, neck and back pain but not severe.[6] It further provided for a residual functional capacity of sedentary to light work with no exposure to strong emotional stress.

The record shows that according to the ALJ, in addition to the aforementioned limitations, Brown's psychiatrist found that she was limited in concentration, persistence and pace to a moderate degree. *Id.* at 24. He noted that the Global Assessment of Functioning ("GAF") of 62 indicated that she was mildly limited in social and occupational functioning but that she was

---

[5]The December 10, 2002 hearing was based on a remand from the court and a subsequent remand from the Appeals Council due to a hearing tape being lost. The actual order to remand occurred on July 6, 2002 after the initial hearing on the second application. Therefore, the ALJ conducted a second hearing limited to the time period between the original application and administrating hearing date for the first application.

[6]Q. Okay. Please assume, and, again, we're talking about this particular time period, claimant then suffered with major depression, which was not acute or incapacitating. According to the medical records, this was **termed mild**. She had mild symptoms, a GAF of 62. She had some limitations in social functioning, not of marked degree. She had a history of carpal tunnel problems. She was post-surgery. Now, for that in the right hand as of the time involved, we'll assume that this was not a severe problem. She had some muscle tension and headaches and neck pain and these would be stress related. And this condition was not acute or incapacitating. It was part of the depression. It was–or related to it, I should say. She had much stress or family problems with her sons being in jail. In that period of time, we're going to assume that claimant did not have frequent, severe pain. Now she complained of back and neck pain. The medical records did not show that to be a precluded incapacitating degree. If we were to assume for that period of time, she would have had a residual functional capacity for sedentary or light work with these important limitations. There should have been no strong emotional stress, no working in crowds of people, and no repetitive use of the hands as would be associated with carpal tunnel problems. Now, considering all that, claimant's age, education which was [leaving school in the ninth grade]. (Tr. at 95-96).
     The ALJ may meet his burden of proving the existence of a substantial number of suitable jobs in the economy by relying upon an expert's answer to a hypothetical question, so long as the hypothetical itself corresponds to conclusions that are supported by substantial evidence in the record. *Arocho v. Secretary*, 670 F.2d 374, 375 (1st Cir. 1982).

generally functioning well.[7]

The ALJ indicates in his opinion that he presented the same residual functional capacity, age, education and background information to the vocational experts in both hearings and that based upon the information provided, Brown could work in entry-level jobs requiring no skill in positions such as a sales clerk, call out operator, information clerk and telemarketer.[8]  (Tr. 27).  He further found during the December hearing she could work as a cashier, sales clerk, janitor/cleaner and miscellaneous food preparation.  (Tr. 27).

According to the record, the ALJ provided the same residual functional capacity of sedentary to light duty to both vocational experts.  However, he failed to provide the same limitations to the second vocational expert and he failed to reference the effect of a moderate limitation in the area of concentration, persistence and pace on Brown's ability to function as suggested by the record.

However, the Commissioner directs the Court to the consultative psychiatrist, Dr.Alvin Cohen as support that the residual functional capacities of June and December are the same, and that the ALJ's opinion is correct.  The Commissioner further directs the Court to look at the consultative examination by Dr. Helen Mason done in 2001 as proof that the ALJ's hypothetical of December 2002 was supported by substantial evidence of record and implicitly incorporated the limitations recognized by the June 2002 hypothetical.

While the record contains the report of Dr. Cohen of November 1999, Dr. Mason's records are not a part of the administrative record.  It is true that Dr. Cohen diagnosed Brown with Major

---

[7]GAF is a standard measurement of an individual's overall functioning level "with respect only to psychological, social and occupational functioning."  Am. Psychiatric Ass'n Diagnostic and Statistical Manual of Mental Disorders at 34( 4th ed. 2000)(DSM-IV).

[8] The vocational expert who  testified in the first hearing is Dr. Terry Blackwell.  The vocational expert who testified in the December hearing is Patricia Ehlinger. ( Tr. 45 & 76)

Depression requiring therapy.  *Id.* at 260.  He further found that she complained about being in a daze sometimes not knowing where she is or what she is doing.  *Id*. at 258.  Her concentration was clinically adequate and her ability to recall general information and her intellectual capacity was also adequate.  *Id.* at 260.  He further found that she was not markedly limited in her ability to perform activities of daily living or social functioning.  *Id*.  While he noted that she could concentrate, he further observed that she was depressed and could not handle stressful circumstances.  *Id.*

The only record of Dr. Mason's medical opinion is the ALJ's summary reference contained in his opinion.  *See id.* at 24.  The ALJ indicates that Dr. Mason determined Brown's concentration and attention span were adequate.  *Id.*  However, the available record evidence regarding her Mental Residual Functional Capacity shows that Brown was moderately restricted in concentration persistence and pace as of December 1999.  *Id.* at 280.  Dr. Burchell, a consultative physician found she was moderately limited in her ability to maintain concentration and attention for extended periods and in her ability to work a day or week without interruptions as a result of her psychologically based condition.  *Id.*  The record shows  that  Brown's moderate limitation in concentration persistence and pace was not incorporated in the hypothetical presented to the vocational expert for consideration.  The Court finds therefore that  the December 2002 hypothetical in question does not reasonably incorporate Brown's limitations.

The Commissioner further suggests that because Brown's counsel had an opportunity to correct the deficiency, even though the hypothetical may not have been complete, the Court should affirm the ALJ's finding of no disability.  It is true that Brown's attorney was provided an opportunity to question the vocational expert about her limitation in concentration persistence and pace, however, the ALJ did not correct his hypothetical to factor in Brown's limitation in

9

concentration, persistence and pace so that the hypothetical would be consistent with the record evidence.  Therefore the fact that Brown's attorney had the opportunity to correct the deficient hypothetical but did not does not render her non-disabled.

Additionally, Brown complains that the ALJ failed to incorporate her additional restrictions of drowsiness, constant severe pain in her neck, back, hand and right arm in the December 2002 hypothetical.  *Id.* at 70.  The Commissioner suggests that the ALJ incorporated these limitations in his hypothetical of December 2002.

The record shows that the ALJ considered the degree of pain experienced by Brown.  He noted that she complained of sharp pain in her back and right arm since falling in 1996.  *Id.* at 26. However he also noted that despite her complaint of pain, she worked from 1996-1999.  *Id.*  He further relied upon Dr. Mandich's report that Brown's physical examination was not remarkable and that her x-rays and MRI of the neck and back showed mild degenerative changes.  *Id.*

The record shows that in  January1999, Brown was diagnosed with chronic pain syndrome. *Id.* at 289.  She complained of her muscles knotting but her MRI and EMG resulted in normal neurological findings.  *Id.* at 283, 289.  She was given an increased dosage of Elavil for her insomnia, but discontinued use of Flexeril and began taking Robaxin, 750 mg., and a low dose of Valium. (Tr. 289).  By October 1999 she was complaining of wrist pain, neck and arm pain, and depression.  *Id.* at 284.  On examination, muscle spasms were noted in her Trapezius with no evidence of de-nervation.  *Id.*  She was prescribed Flexeril, heat and physical therapy exercises, and instructed to return in four to six months.  *Id.*  She testified during the hearing that the Flexeril made her sleep.  *Id.* at 88.

The record shows that despite her testimony and the medical evidence  from April 1999 to

June 2000, the vocational expert was not provided any information regarding the side effects of her medication, particularly that Flexeril made her sleepy.   Consequently, it is unclear whether the medication's side effect would impact her residual functional capacity.   The ALJ's failure to consider the side effect of her medication and his submission of a defective hypothetical constitutes reversible error.

## V.   Request for Award of Benefits Due to Extensive Delay

Brown suggests that  because she has been seeking disability benefits since September 1999 and the Administration has not awarded benefits, the significant delay in time points to the presence of a disability such that she should be awarded benefits.   She complains that she has had three hearings, and two Appeal Council Reviews with at least one remand.   As a result, it has been almost six years since she first sought benefits.   In support of her position, Brown relies upon *Martin v. Heckler*.  *See* 748 F.2d 1027, 1036-1037 (5th Cir. 1984).

The Commissioner contends that the evidence indicates that Brown is not disabled and that 42 U.S.C.§ 405g does not contemplate the punitive award of benefits.   (Def. Mem. at 10).   The Commissioner further contends that a delayed in process does not constitute a violation of the act. *Id*. at 11.   Finally, the Commissioner contends that *Martin* is distinguishable  from the subject case because *Martin* dealt with the remedies available when the Commissioner terminates consideration of a claim prematurely during the sequential evaluation process.

In  *Martin*, the claimant had a breathing  impairment and appealed a district court decision upholding the agency's denial of benefits.  *Martin,* 748 F.2d at 1032-1033.   The Circuit Court found that the Secretary erred when it eliminated his claim for benefits at step 2 because his impairment was more than a slight abnormality with minimal effect on his ability to work.  *Id.* at 1034.   The

Court further considered the claimant's suggestion that his ailments should have been disabling per se. *Id.* The appellate court agreed. *Id.*

In the subject case, it has been several years since Brown first sought disability. It is true that the administrative process has not been prompt. However, on review of the issues presented, the Court finds that a reversal for the delay in processing the claim is not warranted and further finds that delay was not a reason that the Circuit Court awarded benefits in *Martin*.

A decision awarding benefits should be based on the evidence and not on the mistakes of the agency. The challenge to the administrative decision was regarding the failure of the ALJ to include all the impairments in the hypothetical presented to the vocational expert. Without accurate consideration of the impairments, the vocational expert could not fairly say whether Brown is disabled.

Consequently, the ALJ's reliance upon an incomplete hypothetical means that the opinion cannot be based upon substantial evidence. The only way for the opinion to be based upon the evidence is if it is remanded again for consideration of (1) all of the impairments supported by the medical evidence and (2) the medical evidence relied upon by the ALJ must be contained in the administrative record which will allow for meaningful review should it become necessary. Therefore, Brown's request for an award of benefits based upon the administrative delay is denied.

**VI**.    **Recommendation**

It is the **RECOMMENDATION OF THIS COURT** that the ALJ's decision denying Michelle Brown's Supplemental Security Income Benefits and Disability Insurance Benefits be **REVERSED** and **REMANDED** for consideration of all the evidence of record. The ALJ shall consider all of the limitations including her moderate deficiency in concentration, persistence and

pace and any side effects caused by her medication.  To the extent necessary for a determination of her residual functional capacity, the ALJ shall submit all evidence of limitations supported by the record to the vocational expert for consideration.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within ten (10) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this _____27th_____ day of June 2006.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**